IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **COURTNEY HUGHES** | § | |
| | § | |
| v. | § | A-14-CA-1046 LY |
| | § | |
| **YODLE, INC., GLORIA'S DOMAIN,** | § | |
| **INC. D/B/A GLORIA'S AND** | § | |
| **MICHAEL JORDAN** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff's Motion to Remand and Request for Attorneys' Fees, filed on December 2, 2014 (Dkt. No. 15); Defendant Yodle, Inc.'s Partial Motion to Dismiss, filed on December 23, 2014 (Dkt. No. 24); Defendant Gloria's 12(b)(6) Motion to Dismiss for Failure to State a Claim, filed on February 13, 2015 (Dkt. No. 41); Defendant Gloria's Motion to Designate Responsible Third Party, filed on March 31, 2015 (Dkt. No. 52); Plaintiff's Motion to Compel, filed on April 9, 2015 (Dkt. No. 58); and the various response and reply briefs.

The undersigned submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

### I. GENERAL BACKGROUND

Plaintiff Courtney Hughes ("Hughes") is a former employee of Defendant Yodle, Inc. ("Yodle"). On the night of November 14, 2012, Hughes went to Gloria's restaurant in the Domain

shopping center, in Austin, Texas to attend a work training dinner hosted by Yodle. Hughes ordered a margarita with her meal and after the waiter told her that the drinks were quite strong, she allegedly informed him that she would only order one drink that night. However, later in the evening, the waiter brought Hughes another margarita that she denies ordering. After Hughes told the waiter that she did not order the margarita, the waiter told her it was "on the house." Hughes proceeded to drink the margarita. Hughes alleges that approximately 15-20 minutes after she began to drink the second margarita, she blacked out. Hughes alleges that either the waiter or someone else at the restaurant had put a debilitating drug in the margarita that caused her to black out.

Hughes contends that after she blacked out at the dinner, she recalls "three flashes of memory." First, Hughes recalls that she was in the front passenger seat of her vehicle while a man drove and another man sat in the back seat. Next, Hughes remembers talking to a man in a crowded place who told her that she was drunk. Lastly, Hughes remembers waking up on a bed and pushing a man's head away from her lower body telling him to stop and then losing consciousness again. Hughes woke up the next morning in a hotel room by herself, only clothed from the waist up. Hughes contends her vision was blurry, her equilibrium was off and notes that "[s]he had never felt so disoriented in her entire life." Dkt. No. 1-1 at 3. Hughes later went home, showered, and found bruises all over her legs. Hughes contends that her face was also red, swollen and bumpy.

Hughes reported the incident to the police, "but did not know the person's name and did not even know for sure if she had been raped since she had very little recollection of the night." *Id.* at 3. Several months later, Hughes alleges that "the man who assaulted [her], Defendant Michael Jordan, sent her both a friend request on Facebook and a request on from LinkedIn" and that she then "recognized the man's face as the one who assaulted her that night." *Id.* at 5. Subsequently, Hughes

learned that Jordan was a Yodle employee at the time of the alleged assault. Hughes contends that she did not realize for certain that she was raped until November 6, 2014, when Jordan allegedly "admitted to having sex with Plaintiff multiple times that night, although he was falsely claiming that it was consensual." *Id.* Hughes further alleges that Jordan had an extensive criminal history before Yodle hired him.

On November 20, 2014, Hughes, a Texas resident, filed the instant lawsuit in the 353rd Judicial District of Travis County, Texas against Yodle, a Delaware corporation, Gloria's Domain, Inc. d/b/a Gloria's ("Gloria's"), a Texas corporation, and Jordan "an individual who can be served at his last known address" in Lakeland, Florida. Hughes' Petition alleges Texas common law claims of sexual assault and assault and battery against Defendant Jordan. *See* Dkt. No. 1-1. In addition, Hughes alleges negligence claims against Defendants Yodle and Gloria's. On November 20, 2014, Yodle removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. On December 2, 2014, Hughes filed a Motion to Remand and Request for Attorneys' Fees, arguing that the Court lacks jurisdiction because there is not complete diversity of citizenship. Defendants Yodle and Gloria's have each filed Motions to Dismiss. However, because the Motion to Remand questions the Court's jurisdiction, the Court must address the Motion to Remand before addressing the Motions to Dismiss. *See Ramming v. Untied States*, 281 F.3d 158, 161 (5th Cir. 2001).

## II. STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction having only the authority endowed by the Constitution and that conferred by Congress. *United States v. Hazlewood*, 526 F.3d 862, 864 (5th Cir. 2008). A defendant can remove to federal court any civil action brought in state court over which the district court would also have had original jurisdiction. 28 U.S.C. § 1441(a). A federal

district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a). "[F]or diversity jurisdiction to exist, there must be complete diversity—that is, no plaintiff can be a citizen of the same state as any of the defendants." E. Chemerinsky, Federal Jurisdiction § 5.3.3, p. 315 (6th ed. 2012) (*citing Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806)). To determine whether jurisdiction is present for removal, courts consider the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995). "The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). "Any ambiguities are construed against removal and in favor of remand to state court." *Id.*

### III.  ANALYSIS

Hughes argues that the Court lacks jurisdiction because Yodle has failed to meet its burden to set forth the citizenship of Michael Jordan. In addition, Hughes argues that Yodle has failed to show that Gloria's was fraudulently joined in this lawsuit in order to defeat diversity jurisdiction.

**A.  Un-Served Defendants**

Yodle argues that there is complete diversity in this case because Hughes is a Texas resident and Yodle is a Delaware corporation. *See* Dkt. No. 1 at ¶ 5. Yodle contends that the Court need not look at the citizenship of Defendants Gloria's (an undisputed Texas corporation) and Jordan (a disputed citizen) because they were not yet served at the time of removal. *Id.* at ¶ 6. Yodle is mistaken. "When evaluating whether diversity exists, a court cannot ignore a defendant's citizenship simply because the defendant has not been served." *DTND Sierra Investments, LLC v. Bank of New York Mellon Trust Co.,* 2013 WL 432923 at * 1, n. 2 (W.D. Tex. Feb. 4, 2013). As the Fifth Circuit has explained:

4

> A non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service.

*New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998). *See also, Pullman Co. v. Jenkins,* 305 U.S. 534, 541 (1939) (failure to serve resident defendant would not justify removal); 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & JOAN E. STEINMAN, FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed. 2012) (same). Thus, the fact that Hughes had not served Gloria's or Jordan at the time Yodle removed the case has no effect on whether diversity jurisdiction exists in this case. Yodle must therefore show that Defendants Gloria's and Jordan are not citizens of Texas, or if they are, that they were improperly joined.

**B.    Improper Joinder**

Even though Yodle acknowledges that Gloria's is a Texas citizen for diversity purposes, Yodle contends that removal was nevertheless proper because it contends Hughes improperly joined Gloria's to defeat diversity jurisdiction.

As noted, a federal district court has subject matter jurisdiction over a removed state court action when the amount in controversy is met and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a). However, a district court shall not exercise jurisdiction over a suit "in which any party, by assignment or otherwise, has been *improperly* or *collusively* made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359 (emphasis added). To establish improper joinder,[1] the party seeking removal must demonstrate either: "(1) actual fraud in the pleading of

---

[1] The Fifth Circuit uses the term "improper joinder" instead of the phrase "fraudulent joinder," to describe the doctrine that ignores a lack of complete diversity where the plaintiff joins a non-diverse defendant to avoid federal jurisdiction. *See Smallwood*, 385 F.3d at 571 n. 1.

jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).

Yodle does not allege actual fraud in this case. Therefore, Yodle must show, under the second method of establishing improper joinder, that "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005). In determining the validity of an improper joinder claim, courts " do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

To determine whether there is a reasonable basis to predict that the plaintiff might be able to recover against a non-diverse defendant, courts generally "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against" the non-diverse defendant. *Smallwood*, 385 F.3d at 573. Courts have repeatedly emphasized that "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood*, 385 F.3d at 574. Thus, in deciding whether a party was improperly joined, the court must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff." *Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 281 (5th Cir. 2007). "As the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns. The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281-82 (internal citations and quotations omitted).

The Court must determine whether there was a right to remove by examining the plaintiff's pleading at the time of the petition for removal. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). When considering improper joinder specifically, "[p]ost-removal filings may not be considered. . .when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999). Accordingly, the Court must look to Hughes' ability to recover against Gloria's based on the claims alleged in her Original Petition filed before removal.

Hughes' Petition alleges that Gloria's was negligent under Texas law by (1) "allowing Plaintiff to be drugged at the Gloria's restaurant in the Domain, including Gloria's serving her a drink she did not order that was in all likelihood ordered for her by somebody else, and both Defendants allowing her to leave in an intoxicated state due to being drugged and not making sure that Ms. Hughes was instead taken safely home," and in (2) failing to use ordinary care in hiring, supervising, retaining employees, and training employees "including Gloria's allowing a waiter to serve a woman a drink she did not order and both Defendants not making sure that Ms. Hughes was taken safely home." Exh. A to Dkt. No. 1, at p. 5.

### 1. Texas Dram Shop Act

Yodle first argues that Hughes' negligence claim against Gloria's is barred under Texas law by the Texas Dram Shop Act. Specifically, Yodle argues that Hughes' claim is barred by the exclusivity provision of the Act because her claim "relies upon Gloria's service to her of an alcoholic beverage." The Court disagrees.

"The [Texas] Legislature enacted the Dram Shop Act to 'deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially

inflict serious injury on themselves and on innocent members of the general public.'" *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007) (quoting *Smith v. Sewell*, 858 S.W.2d 350, 356 (1993)). The Texas Dram Shop Act provides, in relevant part, the following:

> (a) This chapter does not affect the right of any person to bring a common law cause of action against any individual whose consumption of an alcoholic beverage allegedly resulted in causing the person bringing the suit to suffer personal injury or property damage.
>
> (b) Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action under this chapter and may be made the basis of a revocation proceeding under Section 6.01(b) of this code upon proof that:
>
>> (1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and
>>
>> (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

Tex. Alco. Bev. Code § 2.02 (Vernon 2007). In enacting the Dram Shop Act, "the Legislature created a duty, not recognized at common law, on alcohol providers and increased the potential liability of providers *as a means of deterring providers from serving obviously intoxicated individuals.*" *Duenez*, 237 S.W.3d at 684 (emphasis added).

> The Texas Dram Shop Act also contains an exclusivity clause which states the following:
>
> (a) The liability of providers under this chapter for the actions of their employees, customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages.
>
> (b) This chapter does not impose obligations on a provider of alcoholic beverages other than those expressly stated in this chapter.
>
> (c) This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older.

Tex. Alco. Bev. Code § 2.03 (Vernon 2007). Yodle relies on this exclusivity provision to argue that "Hughes' negligence claim against Gloria's relies solely upon alleged harm suffered by her arising out of having been served a specific alcoholic beverage—a margarita—and therefore is squarely barred by the exclusivity provision of the Dram Shop Act." Dkt. No. 26 at p. 11-12. Yodle is mistaken. As expressly stated in the statute, the exclusivity provision only applies to causes of action brought under Section 2.02 of the Dram Shop Act, that is, claims against providers of alcohol who serve alcoholic beverages to an intoxicated individual. *See Duenez*, 237 S.W.3d at 684-85 (noting that the Legislature "made the Act the exclusive means of pursuing a dram shop *for damages for intoxication*."). Hughes, however, is not complaining that Gloria's served her an alcoholic beverage or that it knowingly provided her alcohol while she was drunk; rather, she is complaining that she was served a drink containing a drug. Thus, the Dram Shop Act does not apply in this case.

The Texas Supreme Court has specifically held that the exclusivity provision of the Dram Shop does not bar "all common law causes of action against commercial sellers of alcohol for any conduct that in some way involves providing alcohol." *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 453 (Tex. 2002). In *Love*, the plaintiff suffered serious bodily injuries in a motor vehicle accident after consuming twelve alcoholic beverages while working as an exotic dancer at a nightclub. The plaintiff, who was working as independent contractor, sued the nightclub under the Texas Dram Shop Act and for common law negligence and gross negligence. The nightclub argued that the plaintiff's common law negligence claims were barred under the exclusivity provision of the Dram Shop Act. The Texas Supreme Court rejected this argument, reasoning the following:

> The Dram Shop Act was clearly intended to pre-empt common law claims against commercial sellers of alcohol for claims that arise from the sellers' provision of alcohol. *However, we conclude that it does not bar all common law liability for any conduct by a seller toward its employee or independent contractor whenever alcohol*

> *is involved.* The duty underlying Love's cause of action is derived from Treasures' alleged failure to use reasonable care in exercising its retained control over its independent contractor's work. In this case, if Treasures were merely an exotic night club that did not sell alcohol, the statute would not bar Love's common law claims. Nor, if the alcohol had not been purchased from or supplied by Treasures, would the statute bar her common law claims against Treasures.
>
> Thus, Love is not suing Treasures as a "provider" under the Dram Shop Act. Instead, she is suing Treasures as her employer for failing to use reasonable care in exercising its retained control over her work as an independent contractor. Therefore, the Dram Shop Act, which "provides the exclusive cause of action for *providing* an alcoholic beverage to a person 18 years of age or older," does not bar Love's common law claims as an independent contractor against her employer.

*Id.* at 453 (internal citations omitted )(emphasis in original). Similar to *Love*, Hughes is not suing Gloria's as a "provider" of alcohol, but rather for serving her a drink allegedly laced with an incapacitating drug. As Hughes notes, she would have asserted the same claim against Gloria's if the alleged drug had been placed in a non-alcoholic beverage. The exclusivity provision of the Texas Dram Shop Act does not preclude Hughes' claims in this case.

### 2. Is there "no possibility" of recovery against Gloria's?

Yodle contends that even if the exclusivity provision of the Texas Dram Shop Act does not apply in this case, Hughes' negligence claim nevertheless fails to state a claim for relief. Specifically, Yodle contends that "serving an unordered cocktail to a female patron" cannot constitute negligence under Texas law. However, Hughes alleges that Gloria's was negligent by "serv[ing] her a drink that contained a drug in it that drugged her, caused her to black out and injured her, including causing her to ultimately be raped." Dkt. No. 30 at p. 5. In addition, Hughes alleges that Gloria's was negligent in failing to use ordinary care in hiring, training, supervising and retaining the waiter that served her the tainted drink. These allegations are sufficient to state a negligent hiring/supervision claim under Texas law. *See e.g., Wansey v. Hole*, 379 S.W.3d 246, 247

(Tex. 2012) (per curiam) (noting that a negligent hiring claim "requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices."); *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006) (stating "[n]egligence in hiring requires that the employer's 'failure to investigate, screen, or supervise its [hirees] proximately caused the injuries the plaintiffs allege'" (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995)).

Yodle also contends that Hughes's negligence claim fails because she does not have sufficient evidence to support the claim. The Fifth Circuit disagrees:

> In this circumstance, in which the defendant has the burden of establishing fraudulent joinder and the plaintiff can clearly state a claim upon which relief can be granted as to the non-diverse defendant, the lack of substantive evidence as to the non-diverse defendant does not support a conclusion that he was fraudulently joined.

*Travis v. Irby*, 326 F.3d 644, 650 (5th Cir. 2003). In order to establish that Gloria's was fraudulently joined, Yodle "must put forward evidence that would negate a possibility of liability on the part of [Gloria's]." *Id.*; *see also*, *McKee v. Kansas City Southern Ry. Co.,* 358 F.3d 329, 336 (5th Cir. 2004) ("The district court was not to conduct a mini-trial of McKee's claims but rather determine if there was any reason for the train crew to be defendants in the case. . ."). Yodle has failed to show that there is "no possibility" for Hughes to establish Gloria's liability at trial.

In addition, Yodle's assertion that Hughes has failed to produce evidence to support her claim (*i.e.*, that she was actually drugged and raped) "is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the local party." *Smallwood*, 385 F.3d at 574. As the Fifth Circuit has explained:

> When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants

alone, there is no improper joinder.  Rather, in such a case, there is only a lawsuit lacking merit.  In other words, there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that the plaintiff's case [is] ill founded as to all the defendants.

*Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 283 (5th Cir. 2007) (quoting *Smallwood*, 385 F.3d at 574-75) (internal quotations omitted).  Accordingly, Yodle has failed to meet its burden of establishing that the Gloria's was improperly joined in this case.

In sum, Gloria's, a non-diverse defendant, was properly joined in this case.  As a result, complete diversity between the parties is lacking, and the case should be remanded to state court.[2] However, the Court finds that Hughes' Request for Attorney's Fees should be denied.

## IV.  RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the Court **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion to Remand and Request for Attorneys' Fees (Clerk's Dkt. No. 15).  Specifically, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Remand and **REMAND** this case 353rd Judicial District of Travis County, Texas, and **FURTHER RECOMMENDS** that the Court **DENY** Plaintiff's Request for Attorneys' Fees.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

---

[2] Because the Court finds that Gloria's was not improperly joined, the Court need not address the parties' arguments regarding whether Defendant Jordan is a Texas citizen for the purposes of diversity jurisdiction.  Because the Court lacks jurisdiction over this case, the Court is prohibited from ruling on the pending Motions to Dismiss (Dkt. Nos. 24 &41), Motions to Designate Responsible Third Party (Dkt. No. 52) and Motion to Compel (Dkt. No. 58).

being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 13th day of May, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE